FILED
U.S. DISTRICT COURT
AUGUSTA DIV.
2011 AUG 15 PM 3:36
CLERK C Adams
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | | |
|---|---|---|
| ROBERT CURTIS FINCH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 111-093 |
| | ) | |
| EAST CENTRAL REGIONAL | ) | |
| HOSPITAL, AUGUSTA CAMPUS | ) | |
| (JAMES BENTLEY); THE STATE OF | ) | |
| GEORGIA (THURBERT E. BAKER); | ) | |
| THE UNITED STATES (BARRACK | ) | |
| OBAMA); MEDICAL COLLEGE OF | ) | |
| GEORGIA, JOHN ROSENKOETTER, and | ) | |
| LARRY SIMS,[1] | ) | |
| | ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, who is presently being detained at the East Central Regional Hospital ("ECRH") in Augusta, Georgia, brought the above-captioned case pursuant to 42 U.S.C. § 1983. Plaintiff initially moved to proceed *in forma pauperis* ("IFP"). However, his request to proceed IFP was denied, and he was ordered to pay the full $350.00 filing fee. (Doc. nos. 2, 3.) On July 20, 2011, Plaintiff paid the filing fee in full.

As Plaintiff is not proceeding IFP, his pleadings are not subject to the screening provision of 28 U.S.C. § 1915(e)(2). See Farese v. Scherer, 342 F.3d 1223, 1228 (11th Cir. 2003) ("Logically, § 1915(e) only applies to cases in which the plaintiff is proceeding IFP").

---

[1]The **CLERK** is **DIRECTED** to modify the docket to reflect that Plaintiff has named Larry Sims as a Defendant in this case. (See doc. no. 4, p. 1.)

However, because Plaintiff is a prisoner[2] seeking redress against governmental entities, employees, or officers, his pleadings are subject to screening under 28 U.S.C § 1915A, which does not distinguish between IFP plaintiffs and non-IFP plaintiffs. 28 U.S.C. § 1915A; Thompson v. Hicks, 213 F. App'x 939, 942 (11th Cir. 2007) (*per curiam*). Pleadings by *pro se* litigants must be liberally construed, Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (*per curiam*), but the Court may review Plaintiff's complaint[3] and dismiss the complaint, or any part thereof, if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. See 28 U.S.C. § 1915A.

## I. BACKGROUND

The Court notes at the outset that much of Plaintiff's complaint consists of incoherent statements accompanied by bizarre anatomical illustrations. (See, e.g., doc. no. 1, pp. 10-11; doc. no. 5, pp. 2-3.) The Court will not attempt to recount this irrelevant material, but will instead focus on the allegations that relate to the claims he attempts to assert arising from his

---

[2]Of note, the term "prisoner" is broadly defined as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 28 U.S.C. § 1915A(c).

[3]Around the time he paid his filing fee, Plaintiff submitted a series of documents intended to supplement his original complaint. (Doc. nos. 4, 5, 6.) While these documents were docketed as separate filings, they were filed in quick succession in conjunction with the submission of Plaintiff's filing fee; accordingly, the Court will construe them as a single amendment. Because Defendants have neither been served nor filed an answer, Plaintiff is authorized to amend his complaint as a matter of right. See Fed. R. Civ. P. 15(a)(1); see also Mayle v. Felix, 545 U.S. 644, 655 (2005) ("Before a responsive pleading is served, pleadings may be amended once as a 'matter of course,' *i.e.*, without seeking court leave." (citing Fed. R. Civ. P. 15(a))). While the preferred method for amendment is to include all allegations in a single document rather than amending in a piecemeal fashion, the Court will in this instance read Plaintiff's amendments in conjunction with his petition. Accordingly, the documents that the Court will proceed to screen include Plaintiff's original complaint as well as his subsequent filings. (Doc. nos. 1, 4, 5, 6.) For ease of reference, the Court will hereinafter refer to all these documents collectively as Plaintiff's "complaint."

medical treatment and the conditions of his detention.

Plaintiff names the following Defendants in this action: (1) "[ECRH], Augusta Campus (James Bentley)"; (2) "The State of Georgia (Thurbert E. Baker)"; (3) "The United States (Barrack Obama)"[4]; (4) "Medical College of Georgia ['MCG']"; (5) John Rosenkoetter; and (6) Larry Sims. (Doc. no. 1, p. 1; doc. no. 4, p. 1; doc. no. 6, p. 1.) Plaintiff alleges that he arrived at ECRH, a state-run hospital, with severe medical problems, including bleeding and cerebral palsy. (Doc. no. 1, p. 5.) According to Plaintiff, he has reported these problems to Defendant ECRH's medical staff, but has not "not received a diagnosis and [has] been left bleeding." (Id.) Plaintiff reports that, rather than providing satisfactory treatment for his conditions, the medical staff responds to his complaints by informing him that he is delusional. (Id.) Plaintiff also complains that Defendant ECRH's staff has conspired to deprive him of materials needed to draft his legal documents, and that he had to fracture his hand to get the markers that he used to draft his complaint.[5] (Id.)

Plaintiff alleges that on May 28, 2011, he was "abused, robbed, kidnapped, and had [his] rights violated" by unidentified members of Defendant ECRH's staff "during an illegal search." (Id. at 6.) Plaintiff also states that ECRH's staff, including several doctors, are harming him by "depriving [him] of life saving reproductive health surgery." (Doc. no. 5, p. 2.)

---

[4]It is not clear whether Plaintiff means to name as Defendants the individuals identified in parentheses following names of the entities listed as Defendants (for example, James Bentley, who is identified in parentheses following Defendant ECRH). Giving Plaintiff's pleadings a liberal construction, the Court has accounted for the possibility that he means to name these individuals as Defendants in this action. See infra Part II.B.

[5]Plaintiff does not explain how fracturing his own hand resulted in being granted access to materials needed to draft legal documents.

3

Plaintiff further avers that he went to Defendant MCG's facility on May 31, 2011, at which point he informed the medical staff there of several serious medical issues, including carpal tunnel syndrome, a "pelvic cavity," and the aforementioned bleeding. (Id. at 8.) Plaintiff claims that Defendant MCG's staff likewise failed to appropriately diagnose and treat his conditions. (Id.) Plaintiff seeks monetary damages for his improper treatment; he also asks the Court to require that he be provided with materials needed to draft legal documents. (Id. at 7.)

Plaintiff's complaint also includes two documents styled as "criminal complaints," in which he accuses Defendants Rosenkoetter and Sims, who are members of Defendant ECRH's staff, of denying him "reproductive health services," as a result of which he claims to have suffered "serious bodily harm." (See doc. no. 4, pp. 1-2; doc. no. 6, pp. 1-2.) Plaintiff "demands" that the Court have these individuals "publicly charged and arrested." (Doc. no. 4, p. 2; doc. no. 6, p. 2.)

## II. DISCUSSION

### A. The Government Defendants Are Not Subject to Suit

None of the governmental entities named as Defendants in this case – which include ECRH, the State of Georgia, the United States, and MCG – are subject to liability on Plaintiff's claims against them.

Regarding the State of Georgia and Defendants ECRH and MCG, "[t]he Eleventh Amendment insulates a state from suit brought by individuals in federal court, unless the state either consents to suit or waives its Eleventh Amendment immunity." Stevens v. Gay, 864 F.2d 113, 114 (11th Cir. 1989) (footnote omitted) (citing Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 98-100 (1984)). Furthermore, the Supreme Court has

unambiguously stated that "a suit in which the State or one of its agents or departments is named as the defendant is proscribed by the Eleventh Amendment . . . . This jurisdictional bar applies regardless of the nature of the relief sought." Pennhurst State Sch. & Hosp., 465 U.S. at 100 (1984) (citations omitted); see Alabama v. Pugh, 438 U.S. 781, 781-82 (1978) (*per curiam*); Edelman v. Jordan, 415 U.S. 651, 663 (1974); Bailey v. Silberman, 226 F. App'x 922, 924 (11th Cir. 2007) (*per curiam*) ("Neither a State nor its agencies may be sued as a named defendant in federal court absent the State's consent."). Moreover, § 1983 does not abrogate the sovereign immunity of the states. See Quern v. Jordan, 440 U.S. 332, 341 (1979) ("[W]e simply are unwilling to believe . . . that Congress intended by the general language of § 1983 to override the traditional sovereign immunity of the States."). In short, the Eleventh Amendment bars the § 1983 claims that Plaintiff is attempting to assert against the State of Georgia as well as Defendants ECRH and MCG, both of which are state-run entities entitled to Eleventh Amendment immunity. See Williams v. Bd. of Regents, 477 F.3d 1282, 1301 (11th Cir. 2007) (holding that "the Eleventh Amendment bars [plaintiff's] § 1983 claims against [the University of Georgia] and the Board of Regents); Marzec v. Toulson, CV 103-185, doc. no. 52, pp. 9-10 (S.D. Ga. Mar. 30, 2007) (Wood, C.J.) (holding that Eleventh Amendment barred § 1983 suit against MCG and Board of Regents). Accordingly, the Court finds that Plaintiff has failed to state a viable claim against these Defendants.

The United States is also immune from suit. Liability under § 1983 is plainly foreclosed because that statute only authorizes claims of constitutional violations "by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988) (citations omitted) (emphasis added); see also Holmes v. Crosby, 418 F.3d 1256, 1258 (11th Cir.

5

2005). Moreover, even if the Court were to construe Plaintiff's complaint as it pertains to the United States as an attempt to state a civil rights claim under Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971), such claim would still fail. The Supreme Court has held that, absent a waiver of sovereign immunity, the federal government and its agencies are immune from suit. Fed. Deposit Ins. Corp. v. Meyer, 510 U.S. 471, 475 (1994); see also Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 69-70 (2001) (noting that in Meyer, the Court had "unanimously declined an invitation to extend Bivens to permit suit against a federal agency"); Nalls v. Coleman Low Fed. Inst., 307 F. App'x 296, 298 (11th Cir. 2009) (*per curiam*) (recognizing holding in Meyer); Benson v. United States, 969 F. Supp. 1129, 1136 (N.D. Ill. 1997) ("*Bivens* actions, which apply only to individuals, cannot be brought against the federal government."). Accordingly, the United States is immune from suit, and Plaintiff's purported claims against it fail as a matter of law.

In sum, none of the governmental entities named as Defendants are subject to liability in this case. Plaintiff has therefore failed to state a claim upon which relief may be granted against any of these Defendants.

### B. Plaintiff Fails to State a Claim Against Any Individual Defendant

As noted previously, it is not clear whether Plaintiff intends to assert claims against the individuals named in parentheses following the governmental entities listed in the caption of the complaint.[6] However, assuming that Plaintiff does mean to name these individuals as Defendants, he has failed to state a claim against any of them.

First, Plaintiff does not mention these individuals in his complaint aside from naming

---

[6]These individuals include James Bentley, Thurbert E. Baker, and Barack Obama. (Doc. no. 1, p. 1.)

6

them in the caption of the complaint. However, "[s]ection 1983 requires proof of an affirmative causal connection between the actions taken by a particular person under color of state law and the constitutional deprivation." LaMarca v. Turner, 995 F.2d 1526, 1538 (11th Cir. 1993) (internal quotation marks and citations omitted). The Eleventh Circuit has held that a district court properly dismisses defendants where a prisoner, other than naming the defendant in the caption of the complaint, fails to state any allegations that associate the defendants with the purported constitutional violation. Douglas v. Yates, 535 F.3d 1316, 1321-22 (11th Cir. 2008) (citing Pamel Corp. v. P.R. Highway Auth., 621 F.2d 33, 36 (1st Cir. 1980) ("While we do not require technical niceties in pleading, we must demand that the complaint state with some minimal particularity how overt acts of the defendant caused a legal wrong.")). Thus, in the absence of an allegation of any connection between actions of these individuals and an alleged unconstitutional deprivation, Plaintiff fails to state a claim for relief against them.

Furthermore, Plaintiff's claims against the individuals listed in the caption of his complaint are also inadequate to the extent that Plaintiff is attempting to hold them responsible for the acts of their subordinates. "Supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted); see also Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 & 694 n.58 (1978). To hold a supervisory official liable, Plaintiff must demonstrate that either (1) the supervisor actually participated in the alleged constitutional violation, or (2) there is a causal connection between the actions of the supervisor and the alleged constitutional violation. Hartley, 193 F.3d at 1269 (citing Brown v. Crawford, 906 F.2d 667, 671 (11th Cir.

7

1990)).

As noted above, the only mention of the individuals at issue here is in the caption of Plaintiff's complaint, and nowhere does Plaintiff mention that they actually participated in any purported constitutional violation. Similarly, Plaintiff fails to allege a "causal connection" between these individuals and the asserted constitutional violations. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (*per curiam*) (requiring an affirmative causal connection between a defendant and an alleged constitutional violation). The "causal connection" can be established "when a history of widespread abuse[7] puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so," Brown, 906 F.2d at 671, or when "the supervisor's improper 'custom or policy. . . result[s] in deliberate indifference to constitutional rights.'" Hartley, 193 F.3d at 1269 (quoting Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991)). A causal connection may also be shown when the facts support "an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003). Plaintiff has offered no allegations suggesting that individuals listed in the caption of his complaint knew about any widespread abuse or that they were responsible for any improper custom or policy. Thus, to the extent that Plaintiff has named these individuals as Defendants in this action, he fails to state a claim against them.

In addition, the Court will briefly address the documents in the complaint styled as

---

[7]The standard for demonstrating "widespread abuse" is high. In the Eleventh Circuit, "deprivations that constitute widespread abuse sufficient to notify the supervising official must be *obvious, flagrant, rampant and of continued duration*, rather than isolated occurrences." Brown, 906 F.2d at 671 (emphasis added).

8

"criminal complaints," which are directed against Defendants Rosenkoetter and Sims. (Doc. nos. 4, 6.) The claims that Plaintiff attempts to assert against Defendants Rosenkoetter and Sims must fail because they consist of nothing more than a "demand" that the Court initiate a criminal investigation and/or prosecution against them. Notably, however, the law is well settled that "a private citizen has no judicially cognizable interest in the prosecution or non-prosecution of another." Otero v. U.S. Att'y Gen., 832 F.2d 141, 141 (11th Cir. 1987); see also Sattler v. Johnson, 857 F.2d 224, 227 (4th Cir. 1988) (holding that there is no constitutional right for a member of the public, as a victim, to have defendants, including state government officials, criminally prosecuted).

In sum, Plaintiff has failed to state any claim upon which relief may be granted against Defendants Rosenkoetter or Sims, or any of the individuals listed in the caption of his complaint alongside the government entity Defendants.

### C. Allegations of Judicial Bias and Obscene Material

Before concluding, a word is in order regarding some issues arising from the content of Plaintiff's filings. First, the Court notes that, in his complaint, Plaintiff charges that the judges of the Southern District of Georgia, including the undersigned, are biased against him. (See doc. no. 1, p. 14.) Plaintiff offers nothing beyond a conclusory assertion of past "personal conflicts" in support of this accusation, by which he apparently means that the Court has rendered decisions that were unfavorable to him in prior cases. See, e.g., Finch v. East Central Regional Hospital Augusta Campus, CV 109-158 (S.D. Ga. Mar. 17, 2010). As a result, Plaintiff requests that his case be transferred to the Supreme Court. (Doc. no. 1, pp. 13-14.) Plaintiff's assertion of judicial bias has no legitimate factual basis, and his request for a transfer to the Supreme Court has no legal basis; accordingly, the Court rejects

this contention.

Another problematic aspect of Plaintiff's complaint is the obscene and offensive nature of the language and hand-drawn illustrations in his complaint. In particular, Plaintiff's pleadings include offensive race and sexual orientation-related language, as well as several obscene illustrations of the male anatomy. (See, e.g., Doc. no. 1, p. 6, doc. no. 6, pp. 3-4.)

This conduct will not be tolerated from Plaintiff or any other litigant. As the Seventh Circuit has noted, "[l]itigants are understandably disappointed when they do not prevail in court, but that does not give them the license to attack the integrity of the judiciary." In re Mann, 229 F.3d 657, 659 (7th Cir. 2000). Plaintiff's status as a *pro se* litigant does not excuse such behavior. See id. ("[A]busive conduct will not be tolerated, not even from a *pro se* litigant."); Theriault v. Silber, 579 F.2d 302, 303 (5th Cir. 1978)[8] (refusing to "allow liberal pleading rules and liberal pro se practice to be a vehicle for abusive documents").

Moreover, this type of conduct may form the basis for the imposition of sanctions. See Chambers v. NASCO, Inc., 501 U.S. 32, 43 ("Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates."); Martin v. Automobili Lamborghini Exclusive, Inc., 307 F.3d 1332, 1335 (11th Cir. 2002) ("Courts have inherent authority to control the proceedings before them, which includes the authority to impose 'reasonable and appropriate' sanctions."); see also Bethel v. Baldwin County Bd. of Educ., 2009 U.S. Dist. LEXIS 39202, *4-6 (S.D. Ala. May 6, 2009) (striking appeal as sanction where Plaintiff, among other things, referred to the court as "a bunch of corrupt judges, who

---

[8]In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*), the Eleventh Circuit adopted as binding precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981.

10

are full of extortion and fraud").

Accordingly, this Report and Recommendation serves as notification that any future filings by Plaintiff – in this case or any other case – that contain offensive or obscene material, or that attempt to impugn the integrity of this Court by leveling groundless accusations against its officers, will be considered bad faith conduct that will result in the imposition of sanctions.

## II. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Plaintiff's complaint be **DISMISSED** for failure to state a claim upon which relief may be granted and that this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 15th day of August, 2011, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE